UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER RYAN
JANKOWIAK,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

              Defendant.

_____/

Case No. 2:20-cv-11601
District Judge Denise Page Hood
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 13) and AFFIRM THE COMMISSIONER'S DECISION**

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 13), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

Plaintiff Christopher Ryan Jankowiak brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security

(Commissioner) denying his application for Disability Insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 13), Plaintiff's reply brief (ECF No. 14), and the administrative record (ECF No. 10).

## A.    Background and Administrative History

In his March 9, 2017 application for disability insurance benefits (DIB), Plaintiff alleges his disability began on May 4, 2016, at the age of 43.  (ECF No. 10, PageID.193-194.)  In his disability report, he lists "lambango" with sciatica and stenosis in both legs, chronic neck pain with sciatica in both arms, irritable bowel syndrome with constipation and diarrhea, gastroesophageal reflux disease, panic anxiety syndrome, heart palpitations, bradycardia, asthma, insomnia disorder, and restless leg disorders as limiting his ability to work.  (ECF No. 10, PageID.220.) His application was denied on June 6, 2017.  (ECF No. 10, PageID.128-135.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (ECF No. 10, PageID.136-137.)  On November 13, 2018, ALJ Adam Dale held a hearing, at which Plaintiff and a vocational expert (VE), Susan Lyon, testified. (ECF No. 10, PageID.78-109.)  On February 13, 2019, ALJ Dale issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 10, PageID.56-77.)

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 10, PageID.185-192.)  However, on April 16, 2020, the Appeals Council

2

denied Plaintiff's request for review. (ECF No. 10, PageID.45-50.) Thus, ALJ Dale's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 17, 2020. (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 323 pages of medical records, which were available to the ALJ at the time of his February 13, 2019 decision. (ECF No. 10, PageID.289-612 [Exhibits 1F-12F].) These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 4, 2016, the alleged onset date. (ECF No. 10, PageID.61.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: "chronic colecystitis [sic]; biliary dyskinesia, Gastro esophageal reflux disease (GERD); irritable bowel syndrome; degenerative disc disease and foraminal stenosis of the cervical spine; degenerative disc disease, disc extrusion and foraminal stenosis of the lumbar spine; bilateral cubital tunnel syndrome; occipital neuralgia; chronic headaches; panic/anxiety syndrome and generalized anxiety disorder[.]" (ECF No. 10, PageID.61.) At **Step 3**, the ALJ found that

3

Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 10, PageID.62-65.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> to perform light work . . . except he can frequently push or pull with his lower extremities.  He cannot climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, crawl, or climb ramps or stairs.  He can frequently handle and finger bilaterally.  He cannot work at unprotected heights or around moving mechanical parts.  He cannot use vibrating hand tools.  He can perform simple and routine tasks.  He can occasionally interact with supervisors and coworkers, but not the public.  The claimant can work in moderate levels of noise. He can wear tinted glasses or sunglasses at work.  He will be "off task" less than 10% of the workday.

(ECF No. 10, PageID.65-71.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (ECF No. 10, PageID.71.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as general office clerk, assembler at bench or table, and packager at bench or table.  (ECF No. 10, PageID.71-72.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

the Social Security Act, from May 4, 2016, through the date of the decision.  (ECF

No. 10, PageID.73.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

Court does "not try the case de novo, resolve conflicts in evidence, or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.     Analysis

Plaintiff argues that the ALJ's physical RFC assessment is unsupported by substantial evidence because the only medical opinion the ALJ relied upon was that of a non-examining State agency consultant, who rendered his opinion over a year before the decision, and the ALJ independently reviewed the additional medical evidence in the record. (ECF No. 12, PageID.617, 627-636; ECF No. 14.) Defendant asserts, in contrast, that the relevant law does not require an ALJ to seek

a medical opinion in every case, and that substantial evidence supports the ALJ's

assessment of the medical evidence that the State agency consultant did not have

the benefit of reviewing, as well as the RFC determination.  (ECF No. 13,

PageID.641-642, 655-665.)

### 1.    Dr. Robert Nelson's opinion

On June 6, 2017, Dr. Robert Nelson, a non-examining State agency

consultant, completed an RFC Assessment for Plaintiff in which he found that

while Plaintiff's condition resulted in some limitations on Plaintiff's ability to

work, Plaintiff could: occasionally lift and/or carry 20 pounds, frequently lift 10

pounds, and stand/walk/sit 6 hours in an 8-hour workday; frequently climb

ramps/stairs and stoop, kneel, crouch, or crawl, but only occasionally climb

ladders/ropes/scaffolds; and frequently reach and handle with his left upper

extremity.  (ECF No. 10, PageID.116-122.)

In so doing, he provided the following explanation:

Clmnt has hx of CS/LS neural stenosis.  Detailed neurosurgery
evaluation 3/22/17 showed DROM in LS/CS w/ - slr, normal gait,
normal strength in UE.  However, has noted atrophy in LUE and
hand.  Recommended tx w/PT, topical ice, ortho devices including
soft cervical collar, cervical pillow, bilateral heel/elbow pads; no
surgical intervention suggested.  Clmnt also has significant hx of abd
pain and reports fatigue.  See OV 1/16/17 s/p hospital stay;
dx=GERD, anxiety.  BMI is WNL at 21.  Clmnt reports fatigue, but
all blood work is WNL.  Based on the totality of the evidence, clmnt is
limited to work with limitations noted.

(ECF No. 10, PageID.118.)

7

As part of his RFC assessment, the ALJ concluded that Plaintiff's impairments could reasonably be expected to cause the symptoms alleged, but that his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (ECF No. 10, PageID.66.) In so doing, he reviewed Dr. Nelson's opinion, stating:

> In June 2017, DDS physical consultant, Robert Nelson, MD, reviewed the claimant's file and optioned [sic] that he had the physical residual functional capacity to perform light work with the following additional limitations: he can frequently push and pull bilaterally. He can occasionally climb ladders, ropes and scaffolds. He can frequently climb ramps and stairs, stoop, crouch and crawl. He can frequently reach overhead with the left and frequently handle and finger with the left upper extremity and must avoid concentrated exposure to vibration and hazards (1A/7-9). Dr. Nelson is an expert who is familiar with the disability program and its requirements. The limitation to light work is consistent with the evidence as a whole. However, more recent evidence that Dr. Nelson did not have the opportunity of reviewing at the time he rendered his opinion, including diagnostic testing and imaging, supports the additional limitations assessed in the residual functional capacity above. For the foregoing reasons, I give this opinion only some weight.

(ECF No. 10, PageID.70.)

He then discussed the additional medical evidence including, in pertinent part:

- Plaintiff's primary care physician records from October 2017 and January, March, and June 2018, in which he reported no abdominal pain and physical examination showed no significant findings.

8

(ECF No. 10, PageID.67 (citing ECF No. 10, PageID.539, 543-544, 547-548, 567, 569, 574, 576, 578, 581-582, 592).)

- A January 2018 MRI showing "severe left neural foraminal narrowing at C6-7 level from disc osteophyte complex, multilevel neural foraminal narrowing and degenerative changes, but no evidence of significant spinal stenosis or abnormal signal or syrinx in the thoracic cord, and no significant change compared to the previous study."  (ECF No. 10, PageID.67 (citing ECF No. 10, PageID.597-598).)

- February 2018 records from Plaintiff's appointments with neurosurgeon Dr. David Udehn, which document Plaintiff's complaints of increased neck pain radiating into his left shoulder and arm, constant headaches, and weakness, numbness, and tingling in his left arm.  (ECF No. 10, PageID.68 (citing ECF No. 10, PageID.506-512).)

- Plaintiff's referral to physical therapy, but lack of physical therapy records in evidence.  (ECF No. 10, PageID.68 (citing ECF No. 10, PageID.512, 515, 517, 527-530, 576).)

- The results of physical examinations conducted in 2018.  (ECF No. 10, PageID.68 (citing ECF No. 10, PageID.507-508, 514-515, 529, 560-561, 578, 582, 587, 592).)

- January 2018 imaging of Plaintiff's brain showing no acute intracranial findings and no evidence of acute infarction or mass lesions.  (ECF No. 10, PageID.68 (citing ECF No. 10, PageID.495, 599-600).)

- Records from a January 2018 emergency room (ER) visit for complaints of headache and vision problems, as well as records from a follow-up doctor visit diagnosing with and treating Plaintiff for sinusitis, and from a June 2018 doctor visit in which Plaintiff reported that medication prescribed by neurologist Dr. Joel Beltran was working.  (ECF No. 10, PageID.68-69 (citing ECF No. 10, PageID.492, 530, 576).)

## 2.    Development of the record

Citing *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908 (N.D. Ohio 2008),

Plaintiff asserts that his RFC is not supported by substantial evidence because the

ALJ interpreted the year's worth of medical evidence accumulated after Dr.

Nelson's RFC Assessment without an opinion from a medical source regarding his

resulting functional limitations.  (ECF No. 12, PageID.627-636; ECF No. 14,

PageID.666-670.)

Preliminarily, a claimant must prove to the SSA that he or she is blind or

disabled.  20 C.F.R. § 404.1512(a)(1).  Moreover, the claimant "must inform [the

SSA] about or submit all evidence known to [him or her] that relates to whether or

not [he or she is] blind or disabled . . . ."  *Id*.

"The burden of providing a complete record, defined as evidence complete

and detailed enough to enable the Secretary to make a disability determination,

rests with the claimant."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d

211, 214 (6th Cir. 1986).  "[T]he regulations do not require an ALJ to refer a

claimant to a consultative specialist, but simply grant him the authority to do so if

the existing medical sources do not contain sufficient evidence to make a

determination."  *Id.* (citing 20 C.F.R. § 416.917).

When determining a claimant's RFC, "[i]t is well established that the ALJ

may not substitute his medical judgment for that of the claimant's physicians."

*Brown v. Comm'r of Soc. Sec.*, No. 1:14-cv-236, 2015 WL 1431521, at *7 (W.D. Mich. Mar. 27, 2015) (referencing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)).  *See also Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009).  An ALJ "is simply not qualified to interpret raw clinical data and diagnoses in functional terms."  *Henning v. Colvin*, No. 3:13-CV-753-H, 2014 WL 4364622, at *3 (W.D. Ky. Sept. 3, 2014) (citations omitted).

However, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).  As stated by the Sixth Circuit:

> [T]he Commissioner has final responsibility for deciding an individual's RFC, SSR 96-5p, 1996 WL 374183 (July 2, 1996), and to require the ALJ to base her RFC finding on a physician's opinion, "would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."

*Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. Sept. 5, 2013) (quoting SSR 96-5p, 1996 WL 374183, at *2 (S.S.A. July 2, 1996)).  "An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner."  *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017).  *See also Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected

the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."). Nevertheless, the ALJ remains obligated to make a logical bridge between the evidence relied upon and the conclusion reached. *See Gross v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824, 829-30 (E.D. Mich. 2017).

Plaintiff is correct that there is significant case law, including *Deskin*, confirming the general principle that the ALJ "must generally obtain a medical expert opinion" when formulating the RFC unless the "'medical evidence shows relatively little physical impairment' such that the ALJ can permissibly render a commonsense judgment about the functional capacity[.]" *Guido v. Comm'r of Soc. Sec.*, No. 13-cv-13520, 2014 WL 4771929, at *12 (E.D. Mich. Sept. 24, 2014) (Murphy, J., *adopting report and recommendation of* Grand, M.J.) (citing *Deskin*, 605 F.Supp.2d at 912). *See also Gross*, 247 F.Supp.3d at 828; *Lindsey v. Comm'r of Soc. Sec.*, No. 12-12585, 2013 WL 6095545, at *8 (E.D. Mich. Nov. 20, 2013) (Rosen, C.J., *adopting report and recommendation of* Binder, M.J.). In *Deskin*, 605 F.Supp.2d at 910, for example, the Court found the RFC unsupported by substantial evidence because the ALJ gave "only passing mention" to the medical opinion of a State agency reviewing physician issued before two years of additional medical records, and held that:

> As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional

12

> limitations (or only an outdated nonexamining agency opinion), to
> fulfill the responsibility to develop a complete record, the ALJ must
> recontact the treating source, order a consultative examination, or
> have a medical expert testify at the hearing.  This responsibility can be
> satisfied without such opinion only in a limited number of cases
> where the medical evidence shows "relatively little physical
> impairment" and an ALJ "can render a commonsense judgment about
> functional capacity."

*Id*. at 912.  However, an "argument that the ALJ erred because he 'did not rely on

any physician's opinion in formulating his RFC' has been squarely rejected by the

Sixth Circuit." *Davis v. Comm'r of Soc. Sec.*, No. 2:18-CV-10228, 2019 WL

20151899, at *6 (E.D. Mich. Feb. 19, 2019) (Patti, M.J.) (referencing *Mokbel-*

*Aljahmi and Rudd*), *report and recommendation adopted sub nom*, *Davis v.*

*Comm'r of Soc. Sec.*, No. 18-10228, 2019 WL 1324239 (E.D. Mich. Mar. 25,

2019) (Battani, J.).

### 3.   The Court should find that substantial evidence supports the ALJ's RFC determination

For the reasons that follow, the Court should find that the ALJ created a

logical bridge between the evidence he relied upon and the RFC assessed.  Thus,

substantial evidence supports the ALJ's determination.

Plaintiff challenges only his physical RFC, as opposed to those portions

related to his mental impairments,[2] and focuses most in his summary judgment

---

[2] As Plaintiff exclusively challenges his physical RFC, the Court need not address
the ALJ's analysis of Plaintiff's mental health records.

motion on the following evidence unavailable at the time Dr. Nelson rendered his RFC Assessment: a January 29, 2018 MRI of Plaintiff's cervical spine revealing severe left foraminal narrowing at C6-C7 on the left (ECF No. 10, PageID.506-509); progress notes from a February 28, 2018 visit with Dr. Udehn at which Plaintiff complained of back pain, daily headaches, and weakness/numbness, and an examination revealed reduced neck/cervical range of motion, spasm on the left, reduced spinal range of motion, atrophy in the left arm, 4/5 "ODM," "FCU," and "ulnar intrinsics" on the left and right sides (ECF No. 10, PageID.559-561); notes from a March 1, 2018 appointment with Dr. Udehn (ECF No. 10, PageID.513-515); notes regarding March 7, 2018 treatment with his primary care provider Dr. Sally Jo Sperbeck for cluster headaches (ECF No. 10, PageID.567); and his May 10, 2018 consultation with neurologist Dr. Joel Beltran, during which Dr. Beltran suspected chronic headaches with exacerbation and prescribed medication (ECF No. 10, PageID.527-530).  (*See* ECF No. 12, PageID.631-633.)

However, the ALJ extensively addressed these additional records and those cited above, which were either understandable without the aid of opinion evidence or already interpreted in the record by medical professionals, and substantial evidence supports the ALJ's assessment of the records.  The ALJ acknowledged that Plaintiff's January 2018 MRI "showed severe left neural foraminal narrowing at C6-7 level from disc osteophyte complex, multilevel neural foraminal narrowing

14

and degenerative changes," but, referencing the reviewing radiologist's impression of the MRI results, found that the MRI showed "no evidence of significant spinal stenosis or abnormal signal or syrinx in the thoracic cord, and *no significant change compared to the previous study*."  (ECF No. 10, PageID.67 (citing ECF No. 10, PageID.597-598)) (emphasis added.)

The ALJ also discussed the records regarding Plaintiff's February 2018 visits to neurosurgeon Dr. Udehn, and substantial evidence supports the ALJ's assessment of those records.  As the ALJ stated, a review of the record reveals that the February 2018 appointments were Plaintiff's first with Dr. Udehn since he first sought specialized treatment in March 2017, and although Plaintiff complained of increased neck pain radiating into his left shoulder, constant headaches, and weakness, numbness, and tingling in his left arm, subsequent imaging was "unremarkable."  (ECF No. 10, PageID.68 (citing ECF No. 10, PageID.471, 506-507)) (*see also* ECF No. 10, PageID.343-367.)  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283-84 (6th Cir. 2009) (gap in treatment inconsistent with a claim of disability).  In fact, consistent with Defendant's assertions (ECF No. 13, PageID.650), Dr. Udehn made largely the same findings in February 2018 as he had in March 2017, including paraspinal spasm on the left, 4/5 ODM, FCU, and ulnar intrinsics on the right and left, and atrophy in the left arm and hand (compare ECF No. 10, PageID.346-349 with ECF No. 10, PageID.507-508).  And it appears

15

that Dr. Nelson had these 2017 records when he made his RFC Assessment.  (ECF No. 10, PageID.111.)  Further, the ALJ noted Plaintiff's referral to physical therapy, but the absence of physical therapy records in the transcript (ECF No. 10, PageID.68), which Plaintiff does not dispute.  *See Rudd*, 531 F. App'x at 727 (conservative treatment a valid consideration); *Reid v. Comm'r of Soc. Sec.*, No. 14-CV-11455, 2015 WL 5026118, at *9 (E.D. Mich. Aug. 25, 2015) (Murphy, J. *adopting report and recommendation of* Patti, M.J.) (referencing *Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)) (noncompliance with treatment is a valid consideration in an ALJ's disability determination).

Finally, the ALJ extensively documented Plaintiff's medical records related to his chronic headaches (ECF No. 10, PageID.68-69), and his assessment of those records, aided by the interpretation of medical professionals, is supported by substantial evidence.  Plaintiff complained of headaches both before and after Dr. Nelson rendered his RFC opinion (*see, e.g.*, ECF No. 10, PageID.353-353, 492, 495, 527-530, 599-600), but as the ALJ stated (ECF No. 10, PageID.68), his January 2018 MRI showed no evidence of acute infarction or mass lesions in the brain (ECF No. 10, PageID.599), and Dr. Sperbeck attributed the headaches, at least in part, to sinusitis, stating:

> [Plaintiff] is here today for his 6 week follow up appointment.  Dr. Udehn referred [Plaintiff] to Dr. Beltram [sic] Neurologist for his cluster headaches since his MRI and MRA of the brain were normal. He states that his cluster headaches start in his sinuses and the roof of

his mouth.  A week ago his left eye was red and he had some drainage from his eyes.  I will refer him to an Allergist for allergy testing and I will give him a sample of Dymista to try until he sees the Allergist.  I will also prescribe Claritin and call this into his local pharmacy.  I told him some of his headache is likely coming from his sinu[s]es and advised him to put a humidifier in the room where he sleeps.  He otherwise states that he is doing pretty good and has no other medical complaints or concerns at this time.  He denies overt symptoms of fevers, chills, diarrhea, vomiting, palpitations, shortness of breath, chest pain or abdominal pain.

(ECF No. 10, PageID.567.)  Further, Dr. Beltran prescribed medication, which

Plaintiff reported to be working in June 2018 (ECF No. 10, PageID.530, 576), and

Plaintiff had only one visit to the ER in January 2018 for headache complaints

(ECF No. 10, PageID.487-498).  *See Rudd*, 531 F. App'x at 727 (conservative

treatment a valid consideration).

Furthermore, contrary to Plaintiff's assertions (ECF No. 12, PageID.633-

636; ECF No. 14, PageID.667-668), the ALJ made a connection between his

impairments and the limitations assessed in the RFC, stating:

The above findings and the claimant's subjective allegations suggest that the claimant's physical impairments, in combination, limit him to light exertional work.  Accounting more specifically for his chronic colecystitis [sic]; biliary dyskinesia; Gastro esophageal reflux disease (GERD); irritable bowel syndrome; degenerative disc disease and foraminal stenosis of the cervical spine; degenerative disc disease, disc extrusion and foraminal stenosis of the lumbar spine; bilateral carpal tunnel syndrome; occipital neuralgia; chronic headaches and any potential side effects from his medications, he can frequently push or pull with his lower extremities.  He cannot climb ladders, ropes, or scaffolds.  He can frequently stoop, kneel, crouch, crawl, or climb ramps or stairs.  He can frequently handle and finger bilaterally.  He cannot work at unprotected heights or around moving mechanical

17

> parts.  He cannot use vibrating hand tools.  He can work in moderate
> levels of noise.  He can wear tinted glasses or sunglasses at work.  He
> will be "off task" 10% of the workday.

(ECF No. 10, PageID.69.)  And he relied in part on the opinion of Dr. Nelson to

formulate Plaintiff's RFC.  Accordingly, from the entirety of the above, the Court

should find that the ALJ created a logical bridge between the medical evidence and

the RFC imposed.  *Gross*, 247 F.Supp.3d at 829-30.

Any argument that the ALJ erred by including limitations in the RFC

beyond those necessary (ECF No. 12, PageID.633-635; ECF No. 14, PageID.668)[3]

lacks merit, as it relies upon the premise that the ALJ failed to create a logical

bridge between the medical evidence and the RFC imposed.  *See Mosed v. Comm'r*

*of Soc. Sec.*, No. 2:14-cv-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22,

2016) (Patti, M.J.), *report and recommendation adopted by* 2016 WL 1084679

(E.D. Mich. Mar. 21, 2016) ("Plaintiff's argument that the ALJ erred in assessing a

*more restrictive* RFC than that opined by the State agency consultants is curious

and unavailing.").

The Court should find equally unpersuasive Plaintiff's assertion that

although "Plaintiff's cervical impairment had increased in severity from the time of

---

[3] For example, Plaintiff asserts: "Here, the ALJ added limitations to Plaintiff's
RFC based upon his own interpretation of the data that failed to properly account
for his severe cervical impairments.  Thus, his opinion lacks any support
whatsoever."  (ECF No. 12, PageID.635.)

his October 29, 2016, MRI (T 260), to the time of his January 29, 2018, MRI (T 464-65, 553)," "the ALJ failed to include any reaching limitations as identified by Dr. Nelson and the ALJ failed to explain why such a limitation was not included." (ECF No. 12, PageID.634.)  The ALJ only afforded Dr. Nelson's opinion "some weight," a determination Plaintiff does not directly challenge beyond this cursory and speculative argument, and, as provided above, the ALJ reasonably relied upon the reviewing radiologist's impression that the 2018 MRI showed "no evidence of significant spinal stenosis or abnormal signal or syrinx in the thoracic cord, and no significant change compared to the previous study."  (ECF No. 10, PageID.67 (citing ECF No. 10, PageID.597-598).)

### F.    Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

19

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 10, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE